## MOORE v. BEISEKER et al.*

(Circuit Court of Appeals, Eighth Circuit. July 9, 1906.)

### No. 2,387.

1. VENDOR AND PURCHASER — OPTION CONTRACT—CONSIDERATION—CONSTRUCTION.

Defendants agreed in consideration of $500 to sell to plaintiff an option for 30 days to purchase certain land aggregating about 11,000 acres for $76,180, or at the rate of $6.75 per acre for the land conveyed, "for said consideration and price of $76,180, more or less, being with the said $500 at the rate of $6.75 per acre, payable one-third in cash in 30 days from the date of the contract; the balance to be secured by mortgage on the land. Within 30 days plaintiff notified defendant's agent of his acceptance, and directed him to pay the $500 to defendants "as part of the purchase price," after which defendants received and retained such sum without intimating that they held it as a forfeit for plaintiff's failure to pay the one-third of the price within thirty days, because of defendants' failure to furnish abstracts for all the lands described. Held, that the $500 paid was not a mere consideration for the option, but that after notice of plaintiff's acceptance it was held by defendants as a part of the purchase price of the land.

2. SAME—EXPIRATION OF CONTRACT.

A contract for the sale of a large tract of land required payment of one-third in cash in 30 days from the date of the contract, balance to be

---

*Rehearing denied September 4, 1906.

secured by mortgage on the lands. The contract also bound the vendors within 30 days from the date of the contract to convey the lands to plaintiff and to deliver to him complete abstracts of title which he was to have 10 days to examine, and that if it was found that the title was defective as to any of the lands they should be excepted and the price reduced at the rate of $6.75 per acre. Plaintiff notified defendants of his acceptance of the offer, and they received the initial guaranty payment as a part of the purchase price, but failed to tender the abstracts within the 30 days thereafter, treating the contract as in existence, and during the succeeding period of nine months furnished abstracts showing title to about 8,000 acres of land. *Held*, that plaintiff's failure to tender one-third of the purchase price within 30 days from the execution of the contract, as provided thereby, did not operate to terminate it.

3. SAME—OBJECTIONS—WAIVER.

Where a contract for the sale of land required the vendors to deliver to the vendee complete abstracts of title, the vendee to have 10 days therefrom in which to examine the same, and that within 30 days from the date of the contract the land should be conveyed and the vendee should pay one-third of the price, but abstracts were not delivered, and the vendors were not in position to make title within 30 days and after a period of nine months, during which title was cleared to a portion of the land, the parties met to convey such portion, and the only reason for the vendors' refusal to proceed was their insistence that the vendee should pay back interest on the purchase price, they thereby waived the right to claim that the contract was terminated by the vendee's failure to tender one-third of the price within 30 days from the execution of the contract.

4. SAME—INTEREST.

A contract for the sale of land executed November 21, 1901, provided for payment of the price; one-third cash in 30 days from the date of the contract, and the balance in three notes dated December 21, 1901, due December 21, 1902, 1903, 1904, with interest, etc., secured by mortgage on the land. The vendors for a period of nine months after the execution of the contract were unable to make title when the parties met September 12, 1902, for the purpose of closing up the transaction and conveying so much of the land as to which the vendors had title. *Held*, that the vendors were not entitled to interest on the purchase money from December 21, 1901, and that the tender of notes for the unpaid portion of the price bearing interest from September 1, 1902, constituted a full compliance with the vendees' obligation.

5. SAME—CONTRACT—RESCISSION—BREACH—NOTICE.

The vendee, being unable to obtain title to lands purchased as agreed, wrote the vendors: "You are hereby notified that I rescind said contract and declare the same to be no longer in force." This language was however followed by a statement that the vendee demanded return of the guaranty payment made on the contract, and notified the vendors that he would hold them responsible for all damages sustained on account of their refusal to carry out and perform the contract. *Held*, that such letter was a mere notice that the vendee intended to treat the contract as broken for the purpose of further dealings between the defendants, and did not amount to a rescission.

6. SAME—TENDER.

Where pending performance of a contract for the sale of land, the vendee notified the vendors of a variance in the description of the tract between the abstracts furnished and the contract, but the vendors made no reply to such objection, the vendee was entitled to accept the abstracts as correct, and hence the vendors were not entitled to object to a tender in conformity with the abstracts because it included lands different from those described in the contract.

**7. SAME.**

> Where, after tender of performance of a contract for the sale of lands by the vendee, the vendors notified him that if, on a certain day, he carried out the terms of the purchase required of him, they would convey in the manner specified in the contract the lands described or referred to in the vendee's tender, the vendors thereby conceded that the tender made was as to the lands properly described therein.

In Error to the Circuit Court of the United States for the District of North Dakota.

As this case went off on demurrer to the petition, it will be necessary to set out the substance of the petition, which is unusually long.

The plaintiff in error (hereinafter for convenience designated the plaintiff), a citizen of the state of Iowa, entered into a written contract with the defendants in error (hereinafter designated the defendants), citizens of the state of North Dakota, on the 21st day of November, 1901. By said contract the defendants agreed, in consideration of the sum of $500, to sell to the plaintiff the right for thirty days therefrom to purchase certain lands in McLean county, N. D., aggregating about 11,000 acres, for the price of $76,180, or at the rate of $6.75 per acre for the land conveyed, said lands to be conveyed by good and sufficient conveyance, clear of incumbrances, for said consideration and price of $76,180, more or less; being with said $500, at the rate of $6.75 per acre, payable as follows: (1) One-third cash in 30 days from the date of the contract; and (2) the balance in three promissory notes of the plaintiff, each for one-third of said balance, dated December 21, 1901, due on or before December 21, 1902, 1903 and 1904, with interest at 6 per cent. from date, payable annually, the notes to be secured by first mortgage on the lands purchased, or mortgages on different portions, as the defendants might desire, payments to be made at the National Bank of Commerce of Minneapolis, Minn.

The contract provided that the lands be as good as average good farming lands in said county; that said $500 should be paid by the plaintiff at the execution of the contract to one Eugene D. Case, of Minneapolis, Minn., to be held by him until such time, within said 30 days, as he might determine whether or not said lands were of said quality. Should he determine them to be of such quality, or should fail to notify the parties in writing within said 30 days that the lands were not of the required quality, or should the plaintiff decide under any circumstances to purchase the land under the agreement, then said $500 was to be immediately paid by said Case to the defendants. Should the said Case determine that said lands were not of the requisite quality, he was to notify the parties thereof within said time, when the $500 should be repaid to the plaintiff, and the agreement should end. On the payment by the plaintiff of the cash payment and delivery of the notes and mortgage or mortgages provided for, within 30 days from the date of the contract, the defendants were to convey or cause to be conveyed to plaintiff said lands by good and sufficient conveyance; and they were to deliver to the plaintiff complete abstracts of title to said lands, who should have 10 days in which to examine the same after delivery; and should it be found that any of the lands were not owned or controlled by the defendants, or the title to any of them should prove to be otherwise defective, such lands were to be excepted from the lands to be conveyed, and the purchase price reduced at the rate of $6.75 per acre for every acre so excepted, according to the defendants the right to substitute for the lands so excepted, or add to the first above described at the same price per acre, other lands in said county owned or controlled by them, subject to the same conditions, the total consideration being increased or decreased at the rate of $6.75 per acre.

The petition alleged the payment of the $500 by depositing the same with said Case, and that the plaintiff did accept said lands as coming up to the required quality, by letters written to the defendants and said Case, dated December 14, 1901, which letters are filed as exhibits to the petition;

147 F.—24

the petition alleging that thereby the plaintiff notified them that he would take the land contracted for; that he was ready to close the deal as soon as the abstracts were examined according to the contract. The letter to Case directed him to pay the $500, to apply on the purchase price of the land,— the receipt of which letters were duly acknowledged. It is further averred that the defendants failed and neglected to furnish abstracts to any of the lands until long after the expiration of the 30 days; and that by consent the defendants finally furnished abstracts to a large portion of the land (describing the same), designating the lands described as Exhibit A, on August 3, 1902, and the lands described in Exhibit A-1 on August 24, 1902, and that, notwithstanding the abstracts had not been furnished within the time required, the plaintiff accepted title to all said lands described in both said exhibits, and notified the defendants in writing thereof August 12, 1902, as to the lands described in Exhibit A and on August 29, 1902, as to the lands described in Exhibit A-1. On August 1, 1902, the defendants, through their duly authorized agent, said Case, wrote to the plaintiff, sending him abstracts to a large number and descriptions of land, and therein made the request and proposal as follows: "Will you kindly advise me as promptly as may be as to how many abstracts you deem perfect, as we would like to close up the deal for this and the last lot, and make arrangements for extension of the remainder, so that we may bring such action as seems necessary." (Having reference to actions to perfect title.)

This letter was received by the plaintiff on August 2, 1902. The said Case further wrote to plaintiff on August 2, 1902, that on that day he had sent by express to plaintiff a package of abstracts with lists, exhibits and letter of explanation, inclosing an omitted page of the letter in said package, with a request to insert the same in the letter of explanation. In this letter he further stated· that he expected Mr. Helmich would be home the next day, when they would get to hard work on the remaining abstracts, but expressed a desire to settle up on those thus forwarded if the plaintiff was agreeable thereto. On receipt of said letters, on August 12, 1902, the plaintiff consented to the modification and change of said original contract as proposed in said letters from said Case, and advised him of the examination and acceptance of the abstracts of title to the lands described in said Exhibit A, covering about 4,500 acres, and in said letter said: "In accordance with your suggestion in your letter I am ready to close the purchase of the above-described land and to close the purchase of the other land as fast as the titles are acceptable. The titles to these to be submitted as fast as they are ready, and the deal consummated as fast as titles are perfected, and all titles to all the lands in my contract to be perfected and all the lands to be delivered to me according to the terms of my contract by December 10th next."

On August 25, 1902, said Case acknowledged receipt of the above letter, and stated that Mr. Beiseker thought that they should close for at least 8.000 acres then; that if the plaintiff was unable to accept those titles then, they could not be made any more perfect, that delay would not help matters, and that they must be accepted or rejected in their then condition, stating that Mr. Helmich was returning the abstracts with his opinion, as to those titles, and requesting a decision as to whether they would be accepted or rejected.

On August 29, 1902, the plaintiff wrote to Case in reply, advising him of the receipt and approval of the abstracts for the land contained in Exhibit A-1, being about 4,300 acres, stating that: "This list with the list included in my letter to you of the 12th instant contains all the lands for which abstracts have been submitted, making a total as shown by the abstracts of 8,829.08 acres. * * * These titles are accepted of course with the understanding that all papers submitted relating to the title, and not yet recorded, are to be placed on record and the abstracts continued to date to show them. This being in accordance with your statement; the object being to save time in closing the deal on what lands are now ready, as it will no doubt take some time to get these papers all recorded, and the

abstracts continued. * * * In accordance with your request, I am now ready to close the purchase of the above lands as stated in my letter of the 12th instant, the abstracts on the balance of the lands to be submitted as fast as titles are in shape. and the deal closed on the rest of the lands from time to time between now and December 10th. * * * I trust you will be able to get the papers ready at once. as we want to get to selling this land this fall, and it should be on the market now. I see no reason for any serious delay now in closing on the land on which the titles have been approved." In this letter the plaintiff asked the favor of sending the deeds to the First National Bank of Cherokee, with the notes, mortgages, etc., as it would save a trip to Minneapolis, and suggesting that he would come if insisted on but would like to have three or four days' notice, and inquiring if his wife would have to sign the mortgages, and whether or not the signature of an attorney in fact would be sufficient, stating that he had such power: suggesting that if the papers were sent to Cherokee his wife would sign if necessary, but that it would be quite inconvenient for her to go to Minneapolis. The letter closed with a request for an acknowledgment of its receipt, and to advise him when he might expect the papers to be ready.

On September 8, 1902, Case wrote the plaintiff as follows: "There seems to be some misunderstanding on the part of Beiseker and Davidson, as to the matter of interest on the notes and mortgages for the balance purchase money on the McLean county lands. Inasmuch as it is almost impossible to adjust the matter by correspondence I wish you would wire me tomorrow whether you will come to Minneapolis immediately and what day you can be here and I will wire both Beiseker and Davidson to be here to meet you and close up the whole matter. Come as soon as you can while they are home, as I may not be able to get them together after this week. Have been out of the city or would have written you earlier."

On September 9, 1902, the plaintiff replied, expressing his surprise as to any misunderstanding in regard to interest, setting forth at some length the reasons why this interest should not be required, recapitulating the causes of the delay and the extension of time at the request of the defendants, until the present time; suggesting the loss of the season's sales on the lands. and that they had been a damage to him; that the delay was not his fault; that the time had been extended as stated in a former letter in order to get the deal closed on what was ready, so that the land might be put upon the market at once; that he could see no reason for coming to Minneapolis to adjust the matter respecting this interest, as there was nothing to adjust, but that he would come when the deeds were there and the matters all ready for final settlement; and asking for an immediate settlement; that he be advised when they would be ready; and that his letter in regard to his wife joining in the mortgage should be answered. In reply to this letter Case, on September 10, 1902, wrote as follows: "Your favor of the 9th received. Taking everything you say in consideration, I still wish that you would come to Minneapolis as soon as possible, and close up the deal for the land for which the abstracts have been accepted. also please bring the abstracts along so that we may finally check up the whole matter. Mr. Beiseker will be here to-night and if you come up to-morrow night I will have him wait for you, and you can then close, as deed is executed for all lands as stated. In regard to the mortgages, we will have them drawn here, and you can take them back with you for signature by your wife; and the delivery of the papers will be a mere matter of detail. If you can be here Friday morning, kindly wire me, and I will arrange accordingly."

On September 11, 1902, Case wired the plaintiff from Minneapolis as follows: "Beiseker here; you must come to-night. Bring abstracts and all papers connected with the matter."

The petition further alleges that after the letter of August 12, 1902, in which the plaintiff consented to the extension of time requested in the letter of Case of August 2, 1902. the defendants, through their said agent Case, consented thereto by thereafter forwarding additional abstracts to the land

described in Exhibit A-1, and writing said letter of August 25, 1902, above set forth. Pursuant to said request from Case the plaintiff went to Minneapolis September 12, 1902, where he met Beiseker, and was then ready, willing, and able to carry out and perform the contract on his part as to said lands in Exhibits A and A-1; and it was thereby agreed between the parties to close up said deal in like manner as to the other lands as fast as the titles were accepted. The petition then alleges that on the 18th day of September, 1902, the plaintiff tendered defendants $19,423.53 in cash, and the three notes for $13,242.62 each, due on or before December 1, 1902, 1903, and 1904, respectively, dated September 1, 1902, drawing interest at the rate of 6 per cent. per annum from their date, together with mortgage on the lands conveyed by Exhibits A and A-1; that the amount so tendered was one-third of the purchase price, according to the contract, of the lands described in said exhibits, without interest, and less the $500 mentioned in said contract which had been paid to said Case and by him to the defendants—the plaintiff claiming that said $500 was a part of said cash payment on the contract. Said tender was made in writing and by actually producing and offering said cash in legal tender and said notes and mortgages to said Beiseker in the city of Minneapolis, Minn., copies of said tender and exhibits being attached to the petition. The petition avers that "the said defendant Beiseker then and there refused to carry out said contract as to any part of the said lands described therein, unless plaintiff would agree to pay interest on the said purchase price from December 21, 1901."

On September 27, 1902, the plaintiff served upon the defendants written notice that he had elected, because of such refusal, to hold said defendants liable for damages, which notice was filed as an exhibit.

On October 3, 1902, the defendants wrote a counter letter to the plaintiff, in which they claimed that they had not broken the contract, and that the plaintiff had; and that they were willing to proceed to carry out the contract as they understood it. The petition alleges that under said offer "the defendants orally insisted upon and required this plaintiff to pay interest upon the said purchase price of the said lands at the rate of 6 per cent. per annum from the 21st day of December, 1901, notwithstanding that the defendants had failed to furnish this plaintiff with the abstracts of title called for by said contract for the lands described in Exhibits A and A-1 until August 3, and August 24, 1902, nor any title thereto; that the said written demand for a compliance with said contract by this plaintiff upon such terms was and is a further refusal of the tender made by this plaintiff to said defendants," and that the same constituted a refusal to carry out said contract.

The petition then alleges that as to the lands not covered by Exhibits A and A-1 abstracts were furnished which were defective and were returned for correction, and were never afterwards redelivered to the plaintiff. That during all of the time said lands were in the possession and under the control of defendants, were uncultivated prairie lands, having no rental value, and no rents being received therefrom. Then follow the allegations respecting damages, setting forth the items thereof; and a prayer for judgment for $34,428.52. To this petition the defendants demurred on the ground "that said complaint does not state facts sufficient to constitute a cause of action." The demurrer was sustained, and the plaintiff, declining to plead further, judgment was entered by the court dismissing the petition and adjudging the costs against the plaintiff. To reverse this judgment the plaintiff prosecutes a writ of error.

A. R. Molyneux and E. C. Herrick (Herrick & Herrick, on the brief), for plaintiff in error.

Guy C. H. Corliss (Robert G. Morrison, on the brief), for defendants in error.

Before VAN DEVANTER and ADAMS, Circuit Judges, and PHILIPS, District Judge.

PHILLIPS, District Judge, after stating the case as above, delivered the opinion of the court.

It is to be conceded to the contention of counsel for defendants that the contract between the parties, in its inception, was an optional contract, whereby the defendants agreed to sell the lands to the plaintiff on the conditions named, which option ran for a period of 30 days. It may also be conceded that the $500 deposited with Eugene D. Case was in the nature of a consideration for the purchase of the option; and that looking alone to the face of the contract and what, at the time of its execution, was in the contemplation of the parties an obligation on the part of the defendants to convey, did not become operative until the plaintiff complied or offered to comply with the requirement to pay one-third of the purchase money within the specified time. It may further be conceded, that as time was made the essence of the contract, if not waived, the said offer of performance should be made within 30 days; and further, that at any time during the existence of the mere option the plaintiff might have retired therefrom, forfeiting only the $500 to the defendants. This case, however, very fitly illustrates in practice the difference between a mere theory and actual facts. Let us see precisely what was the status of the $500 put up with Case. The first thing to be ascertained was whether or not the lands proposed to be sold were of the quality designated or required. Case was agreed upon to act as arbiter in this matter. If he decided and reported that the lands complied with the requirements, the plaintiff was then to say whether the deal should proceed further. Or, if of his own initiative the plaintiff became satisfied with the lands, he could give notice thereof. If he then declined to proceed further the $500 would become forfeited to the defendants. If he gave notice of his acceptance and the defendants declined to go further the $500 should be returned to the plaintiff. It is upon this hypothesis that defendant's counsel insists that the $500 was only the consideration for the purchase of the option; and that until within the 30-days' period, he made tender of the one-third purchase price for the lands contemplated to be sold, the option lapsed, and the plaintiff has no standing in court.

There are two objections to this contention: In the first place, it is to be observed that on the acceptance by the plaintiff of the lands as satisfactory the $500 might become and be considered a part of the purchase price. This appears in the fact that in the computation of the full acreage at $6.75 per acre it was estimated at $76,680; while the consideration recited in the contract is $76,180, or $500 less in one aspect, and in the other as "$76,180 more or less, *being with said $500* (italics ours) at the rate of $6.75 per acre." Not only did the plaintiff, on December 14, 1901, within the prescribed 30 days, notify the defendants that he would take the lands as satisfactory, and was ready to close the deal as soon as the abstracts were furnished and examined, but in his letter of the same date to Mr. Case, the stakeholder and representative in this matter of the defendants, he said: "You may pay them (the defendants) the $500

now in your hands to apply upon the *purchase price of the lands.*" (Italics ours.)   Thus were the defendants distinctly advised that in consenting to have the $500 handed over to them by Case, it was the purpose of the plaintiff to have it applied as a part payment of the purchase money for the land, and not as a payment for a mere option to purchase.

This $500 was thereafter retained, not only without an intimation from the defendants that they held it as a forfeit on the option contract, but the whole subsequent correspondence and course of dealings between the parties, extending over a period of about nine months, show beyond the possibility of a reasonable cavil that the defendants treated and regarded the transaction thereafter as in full force, executory in effect, and that there was no default on the part of the plaintiff.   On the contrary, the only obstacle that arose in the way of a final execution and closure of the contract for the sale was the inability on the part of the vendors to furnish the required abstracts showing title.

The entire discussion, therefore, able and learned as it is, respecting the quality and effect of a mere contract of option to purchase, is quite academic as applied to a situation like this, where both parties have treated the $500 put up as a guaranty, or, if you please, as the consideration for the option, after *notice of acceptance by the purchaser*, as being held by the vendors as part of the purchase price of the land.   There has never been any rule of construction of contracts more instinct with the spirit of justice and practical sense than that which declares that where the provisions of a contract become the subject of controversy between the parties, the practical interpretation placed ₐthereon by their acts, conduct and declarations is of controlling force.   This for the reason that the interest of each leads him to a construction most favorable to himself, and when differences have become serious and beyond amicable adjustment, it is the better arbiter.   So in Long-Bell Lumber Company v. Stump, 86 Fed. 574, 30 C. C. A. 264, this court said:

"Courts may use the actual construction put thereon by the conduct of the parties under the contract as a controlling circumstance to determine the construction which should be put upon the contract in enforcing the rights of the parties.   The most satisfactory test of ascertaining the true meaning of a contract is by putting ourselves 'in the place of the contracting parties when it was made, and then considering, in view of all the facts and circumstances surrounding them at the time it was made, what the parties intended by the terms of their agreement.'   And when this intention is made clear by the course of their subsequent dealing and action thereon, it must prevail in the interpretation of the instrument, regardless of inapt expressions or careless recitations."

Why should the court be asked to hold that after the expiration of the 30-days limit fixed in the original contract, the contract had spent its force and was at an end, when the parties themselves for months thereafter did not so regard it?   Why should the defendants now be heard to say that the plaintiff had defaulted in exercising the optional right for failure to make tender of the first payment within 30 days after the date of the original contract, when during all the

succeeding months they held the $500 as a payment on the purchase price of the land and were trying to complete their abstracts, and asking for time, the furnishing of which was a condition precedent to the obligation of the plaintiff to pay the one-third of the purchase money? In recognition of the fact that the contract was operative in accordance with the provisions therein, "that should it be found that any of said lands are not owned or controlled by said parties of the first part, or the title to any of them prove to be otherwise defective, such lands shall be excepted from the lands to be conveyed, and the purchase price hereinbefore mentioned shall be reduced at the rate of $6.75 per acre for every acre so excepted," when the defendants discovered that they could not make title to all the lands they requested the plaintiff to accept the title to such of them as were shown to be clear by the abstracts and close up the deal pro tanto. Each party thereupon consented to a separation, not of a dead but of a recognized, subsisting contract, obligatory upon both, whereby the one-third of the purchase money for the acres thus accepted was to be paid and deeds and mortgages exchanged. Not one word of objection was uttered—no bone of contention arose between the parties —until the question of the back interest was broached. According to the facts recited in the petition, the only objection ever made to the final estimate and closure of the purchase came from the demand of the defendants when the parties approached the juncture for the exchange of title papers and payment of the one-third of the purchase money, respecting the deferred payments bearing interest from the 1st of December, 1901.

In Kansas Union Life Insurance Company v. Burman (C. C. A.) 141 Fed. 835, where an insurance agent for the insurance company, under a salary contract and for certain commissions, sent in his resignation to the company specifying certain grounds therefor, which did not include the objection that the insurance company had failed to renew its license in the state where the agent was operating under the contract, and in his suit to recover damages for a breach of the contract of employment he assigned, inter alia, such failure to renew the license as a ground of recovery, it was held that he was estopped from alleging such ground as the cause of his resignation. The court said:

"It is a wholesome rule of law, instinct with fair play, expressed by Mr. Justice Swayne, in Railway Company v. McCarthy, 96 U. S. 267, 24 L. Ed. 693, that: 'Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law.' This principle has been applied in the following instances: Davis v. Wakelee, 156 U. S. 690, 15 Sup. Ct. 555, 39 L. Ed. 578, where a bankrupt obtained his discharge, claiming that the judgment against him was not affected by it, it was held that he could not, in a subsequent action on the judgment, deny its validity. In Davis, etc., Company v. Dix (C. C.) 64 Fed. 411, where it was held that the purchasers of a creamery repudiating the contract on the ground of fraudulent representations, could not thereafter set up an interpolation in the contract. In Harriman v. Meyer, 45 Ark. 40, where it was held that the defense that a

tender was not made in ready money was not admissible where the prior objection was to inadequacy of price. In Wallace v. Minneapolis Elevator Company, 37 Minn. 465, 35 N. W. 269, where it was held that a bailee refusing to deliver wheat because claimed by another, could not afterwards refuse on the ground that the charges were not paid. In Harris v. Chipman, 9 Utah, 105, 33 Pac. 243, where it was held that a plaintiff rejecting title for want of administrator's bond, could not be heard to object afterwards that letters of administration were not under seal. In Ballou v. Sherwood, 32 Neb. 689, 49 N. W. 796, where it was held that title objected to because of pending litigation, the purchaser could not afterwards object for want of seal on the deed. In Frenzer v. Dufrene, 58 Neb. 436, 78 N. W. 720, where it was held that where a party alleged his wife's recalcitrance as a reason for not executing a contract, he could not afterwards be heard to allege other reasons."

From the inception of the dealings between the parties they recognized that as a condition precedent to the right of the vendors to demand, and the obligation of the vendee to make, payment of the one-third of the purchase price, the defendants should furnish the plaintiff with the required abstracts showing title in the vendors to the land. Accordingly abstracts were furnished from time to time as the defendants were able to clear the title. In the first instance it was evidently the mind of the defendants that their title was in such condition that the deal could be brought to a final conclusion within 30 days. Discovering that this expectation could not be realized, they retained $500 as part of the purchase price, and by mutual consent sent in abstracts as they could. The plaintiff, growing impatient over the delay, made complaint and insisted upon closing up the matter. Whereupon the defendants recognizing their inability to perfect title to more than 8,829.08 acres, it was mutually agreed to complete the transfer to that, leaving the residue in abeyance. In view of these actions—the construction placed upon the transaction by the parties—it is made manifest that the contention now put forth for them by astute counsel is an entire after-thought.

The extreme position is now taken in argument by counsel for the defendants that the 10-days period fixed in the contract for examination of the abstracts limits the time for compliance by the plaintiff; and not having made tender within that time, as the abstracts were furnished, the right of action is gone. The provision in question was inserted in the contract for the purpose of allowing the plaintiff a reasonable opportunity to examine or have examined the title, and the right of the defendants to withdraw if the abstracts were longer detained. Having in view that the abstracts would be timely furnished by the defendants, it was then assumed that the deal could be closed within thirty days. But as the abstracts were not furnished within 30 days, the defendants holding the $500 without offering to return it, and both parties being anxious not to lose the sale and purchase, they waived the time limit for completion; and in the very nature of the situation, a reasonable time would be accorded in contemplation of law, having regard to the situation of the parties, in which to conclude the drawing of the deeds of conveyance and the mortgages and to make the payment. At no time

thereafter, although recognizing the contract as in force, were the defendants in position to insist upon the 10-days limit, as they had not furnished the abstracts to all the lands. When the defendants reached the limit of their ability to tender title to more than 8,829.08 acres, by common consent the parties fixed upon another time for the final act of performance. Why, therefore, should the court be asked to rule that the time first agreed upon should control? It was a matter in the keeping of the parties, which they could alter at will. If any consideration were essential to its support, ample is presented in subserving the wishes and interests of the defendants in consummating the sale so long deferred by them, whereby they would be entitled to hold the $500 already received and obtain the balance. When the parties by mutual designation finally met, September 12, 1902, to close up the matter, the only insistence of the defendants was as to the back interest. They assigned no other reason for refusal to proceed. Now that litigation has supervened, they should be heard to make no other excuses.

Were the defendants entitled to the interest demanded? If they were, this action must fail; if they were not, their demurrer was not well taken. Interest is allowed either by virtue of a contract, express or implied, to pay it, or as damages for the wrongful detention of what is due to another. The interest here claimed is based upon the literal terms of the original contract. Interest based on a contract "is recoverable strictly as interest only during the continuance of the contract and as provided by its terms, before breach and not after." 16 American & English Enc. of Law, p. 999. As it was contemplated by both parties in entering into the original contract that the sale would be consummated within 30 days therefrom, the provision respecting the deferred payments bearing interest from the 1st of December, 1901, was consented to and was reasonable. Had the contract been so completed the plaintiff would have been let into possession of the land and been in position to put in on the market, and thereby he would have enjoyed the use—the equivalent of the interest. But for about nine months he was kept out of the possession, solely by reason of the default of the defendants. He was thus deprived of the use and any benefit he might derive by selling on a favorable market. The law will not reward their delinquency by exacting interest from the indulgent party. See 1 Warvelle on Vendors, p. 193; Worrall v. Munn, 38 N. Y. 142, 144.

The further technical objection is made in behalf of the defendants that the amount of money tendered in payment of the one-third purchase money on the 8,829.08 acres was insufficient. This is predicated of the fact that included in the sum tendered was the $500 placed with Case; the contention being that the $500, if a payment on the purchase price, was apportionable to the whole body of the land; i. e., the 11,000 acres. It would seem to be the natural and reasonable thing that where, on a contract of purchase of property, it was agreed that one-third of the consideration shall be paid in cash at the time of delivery, and notes given for the deferred payments, and $500 is paid as earnest money, when the parties come to consummate the bargain the $500 in cash already in the hands of the vendor should be treated

as part of the entire cash payment. The contention respecting the application of the $500 is remarkable in view of the admission made by the defendants in their letter of September 30, 1902, to the plaintiff, in which they proposed (on the terms of course of the demand for back interest) to carry out the contract as to the 8,829.08 acres that "the titles to the remaining lands therein described have proved to be defective, and are therefore by the terms of said contract excepted from the lands to be conveyed." Upon what permissible ground, founded in reason and good conscience, can the defendants demand to retain that portion of the $500 that bears equal relation to the undivided lands?

Keeping in mind the fact that the $500 had been paid as a part of the purchase price of the land, when it was announced by the defendants that they were unable to make title to over 8,829.08 acres, and it was thereupon agreed to close the deal on the acceptance thereof by the purchaser, the natural and reasonable intendment would be that the $500 already received should be deemed a part of the first cash payment to be made. Any other view would be impracticable. No apportionment could be predicated of the number of the remaining acres, for the palpable reason that it was then impossible to know whether the vendors would ever be able to perfect title to the whole or any lesser part; and until such title should be obtained the defendants would not be entitled to hold a dollar of the five hundred. The practical business sense of the situation, therefore, was, when the vendors announced their ability to declare title to only 8,829.08 acres, and the parties consented to close on that, to regard the $500 already received as part of the cash payment then to be made. No such objection was made to the tender in the letter of defendants of September 30, 1902. It was conceived afterwards, in searching for some loophole of escape from liability. The formal tender of the money, notes, and mortgages was made by the plaintiff in about two weeks after the final rupture, which was a reasonable time under the attendant circumstances, and was less than 30 days after it was agreed to accept the title to less than the quantity of land originally contracted for. The notes tendered bore interest from the 1st day of September, 1902, which, in all conscience, was as much as the defendants could claim. Criticism is made by defendants' counsel of the following language employed by the plaintiff in his letter of September 27, 1902, to the defendants:

"You are hereby notified that I rescind said contract and declare the same to be no longer in force."

This must be read and understood, however, in its connection; for it was followed up by saying:

"And I hereby demand the payment to me of the $500 paid by me on said contract, and shall also hold you responsible for all damages sustained by me on account of your refusal to carry out and perform said contract."

From which it is evident that the words "rescind" and "no longer in force" were used in no other sense than to indicate that the con-

tract was broken and at an end for the purpose of further dealings with the defendants; and that, therefore, the plaintiff would hold them liable for damages.

Finally, contention is made on behalf of the defendants that this action should fail, because in his tender the plaintiff included some lands different from those described in the original contract. In the letter of August 29, 1902, addressed by the plaintiff to Mr. Case, attention was called to the fact that in the abstracts sent there were some variances in certain sections from the lands described in the contract, with the suggestion that the error might be in the discription by the abstracter or it might be an error in the list in the contract. "Please see which is correct when deed is made." The suggestion was also made that as to one quarter section described in the contract he understood from parties who had examined the land for him that that section was government land. "You submit an abstract on the N. W. $\frac{1}{4}$ of 17, 144, 83, which is not in my contract, so suppose the description in the contract is an error and was intended for range 83 instead of 82;" followed by a distinct statement that "these titles are accepted" with the understanding that titles not yet recorded were to be placed on record and the abstracts continued to date; with the further statement that "in accordance with your request I am now ready to close the purchase of the above lands, the abstracts on the balance of the lands to be submitted as fast as titles are in shape, and the deal closed on the rest of the lands."

As, under the contract, the right was reserved to the defendants to substitute other lands of equal value; and as they made no reply, or objection to the discrepancy, the plaintiff had the right to accept the abstracts sent as correct, and if there was any objection to the plaintiff's acceptance it was the duty of the defendants to say so when the parties met to close up the deal. More than all this, after the receipt of the plaintiff's formal tender, accompanied with a discription of the lands, the defendants in their letter of September 30, 1902, only imputed to the plaintiff a failure to comply because he had "already declared that you [he] do not intend to take advantage of said contract and purchase thereunder;" and then said:

"You are hereby notified that if you, on or before October 20, 1902, carry out and perform the terms, conditions and portions of said contract to be by you performed in case of the purchase of the said lands by you, we will convey or cause to be conveyed to you, in manner specified in said contract, the lands herein described, the titles to which have been accepted by you, being the same lands described or referred to in your alleged tender to Thomas L. Beiseker on September 18, 1902, and will in all respects carry out and perform our part of said contract."

They thus, in effect, conceded that the tender made was as to the lands properly described in the tender, without one word of objection or suggestion on their part of any variances or noncompliance on the plaintiff's part in respect of the description of the lands. To such a situation applies with pungent force the rule of estoppel, that he who is silent when he should speak shall not be heard to speak when he should be silent.

It results that the judgment of the Circuit Court on the demurrer is reversed, and the cause is remanded with directions to overrule the demurrer, and for further proceedings in conformity with this opinion.