J. H. TEASDALE COMMISSION COMPANY, APPELLANT, V.
SOLOMON C. KECKLER, APPELLEE.

FILED APRIL 13, 1909. No. 15,602.

Sales: BREACH OF CONTRACT: ACTION: DEFENSES: STATUTE OF FRAUDS.
The defendant, a resident of Manley, sold 10,000 bushels of corn
to the plaintiff, the sale being made through a broker residing
in Omaha; communication being had between them by telephone.
On the next day the broker wrote the defendant stating the
terms of the sale, and that confirmation thereof would be received
by the defendant from the plaintiff. Plaintiff wrote the defend-
ant from St. Louis, where it was located and where the corn was
to be delivered, confirming the sale and stating fully the terms
thereof. This letter was headed in bold type as follows: "RE-
PORT IMMEDIATELY ANY ERRORS IN THIS CONFIRMA-
TION.". Defendant did not reply to either of these letters, but
on a later date shipped one car of corn upon the contract, but
failed and refused to ship the remainder. In an action brought
by the plaintiff to recover the damage suffered from a failure to
deliver all the corn, the defendant alleged, as one ground of
defense, that his contract to furnish the corn was conditioned
on his ability to get cars to make the shipment, and that cars
could not be procured. He also pleaded the statute of frauds
as a defense. *Held,* First, that the agreement was taken out
of the statute of frauds by shipping part of the corn; and, second,
that, if the plaintiff's letter of confirmation did not properly
state the terms of the sale, it was the duty of the defendant to
observe the directions of the letter and report any error therein
relating to the terms of the agreement, and that the rule that
he who is silent when it is his duty to speak shall not be heard
when he should be silent should be applied.

APPEAL from the district court for Cass county: PAUL JESSEN, JUDGE. *Reversed.*

*Byron Clark,* for appellant.

*Matthew Gering, contra.*

DUFFIE, C.

December 2, 1906, one J. E. Thatcher, a grain broker living at Omaha and representing J. H. Teasdale Commission Company, the plaintiff herein, sent a written proposal to Keckler, offering to pay 40½ cents a bushel for white corn delivered on the track at St. Louis or East St. Louis on or before January 31, 1907. Acceptance of the offer was directed to be made by wire to reach Thatcher at Omaha by 9 A. M. the following day. Instead of replying by wire, Keckler, who resided at Manley, called Thatcher over the telephone the day following his receipt of the proposition, and agreed to sell 10,000 bushels of corn at the price offered. After the conversation over the phone Thatcher wrote the defendant as follows: "Omaha, Neb. Dec. 3, 1906. Mr. S. C. Keckler, Manley, Neb. Dear Sir: I bought of you this morning for J. H. Teasdale Commission Co., by phone, 10,000 bushels No. 3 white corn or better at 40½c, delivered at St. Louis, shipped on or before January 31, 1907, St. Louis weights and inspection. You will get confirmation and billing from J. H. Teasdale. I thank you for this business, and hope that my bids will continue to be allowed and can do more business with you. Yours truly, J. E. Thatcher." Thatcher wired this purchase to the Teasdale Commission Company, and on December 3, 1907, that company sent to Thatcher the following communication: "Report immediately any errors in this confirmation. J. H. Teasdale Commission Co. Receivers and Shippers of Grain. St. Louis, Dec. 3, 1906. Mr. S. C. Keckler, Manley, Neb. Dear Sir: We confirm purchase from you today by J. E. Thatcher of —— cars, 10,000 bushels 3 Wh corn or better

at 40½ cents per bushel, free on board cars at St. Louis, Mo., to be shipped on or before Jan. 31, 1907, by the any line Ry., and to be billed as follows: J. H. Teasdale Commission Co., St. Louis, Mo. This grain is subject to St. Louis inspection and St. Louis weights. Unless otherwise above provided any grain falling below the grade above specified to be applied on contract at the ruling difference in the St. Louis market price on day of inspection. Inspection and weighing fees to be charged to the shipper. Cars to be loaded in accordance with rules of the R. R. Co. regarding minimum and maximum weights. Any surplus over the contract quantity to be accounted for on basis of St. Louis Market value on day of inspection of last car arriving. If contract is not filled at maturity seller agrees to pay buyer, difference between the St. Louis market price on day of maturity and the contract price unless the contract should be extended by mutual consent. Shipper agrees to notify consignee of weight of each car-load shipped and to leave ample margin on drafts to cover his guarantee of weight and grade. Yours truly, J. H. Teasdale Commission Co." Keckler did not reply to either of these communications, but on January 12, 1907, he shipped one car to the plaintiff containing 767 bushels and 28 pounds of corn, the net proceeds of which, after deducting freight, inspection and weighing, amounted to $259.02. Attached to the bill of lading was a draft upon the plaintiff for $250, which plaintiff paid, leaving a balance in its hands of $9.02. Defendant having failed and refused to ship the remainder of the 10,000 bushels contracted for or to pay the difference between the contract price and the market price at St. Louis, on January 31 this action was brought to recover such difference.

The answer of the defendant denies that he made an unconditional sale of 10,000 bushels of corn to the plaintiff, and alleges that the contract made over the telephone with Thatcher was for the sale of 10,000 bushels of corn conditioned upon his ability to obtain cars from the Mis-

souri Pacific Railroad Company in which to make shipments. He excuses his failure to deliver the corn by pleading that he was unable to procure cars. He admits receiving from Thatcher the letter of December 3, and from the Teasdale Commission Company the letter of confirmation of December 3, but denies that he ever accepted or agreed to accept said letter of confirmation. Another defense pleaded is the statute of frauds, the contract of sale being oral, and the value of the corn being more than $50. He also pleads a counterclaim, asking judgment for $9.02 against the plaintiff, the balance due on the car-load shipped January 12, 1907. Plaintiff replied, alleging facts claimed as an estoppel. The jury returned a verdict finding for the defendant for the amount of his counter-claim, and, judgment being entered upon the verdict, the plaintiff has appealed.

There can be no question that up to January 12, 1907, when defendant shipped to the plaintiff a car-load of corn upon this contract, no valid or binding agreement for the sale of corn existed between the parties, as up to that date no part of the price had been paid, and no part of the corn delivered. The contract sued upon by the plaintiff shows upon its face that the value of the corn exceeded $50. By his action in shipping the corn on January 12 the defendant took the case out of the statute of frauds, and the contract became a valid and binding contract.

There is a sharp conflict in the evidence as to the terms of the agreement made between Thatcher and the defendant over the telephone. Thatcher testified that the defendant did not stipulate that his delivery of the corn should depend upon his ability to secure cars in which to make the shipments. An employee of the plaintiff company who called upon the defendant for the purpose of making a settlement testified that Keckler did not claim at that time that the contract was a conditional one, and there are other circumstances going to support the plaintiff's contention that the sale was an absolute sale, uncoupled with any conditions. On the other hand, the de-

fendant asserts and testified that the contract was to be binding on him only in case he could secure cars from the railroad company. If the case rested upon the oral evidence introduced upon this question, we could not say that the verdict of the jury was not supported by the evidence, but we think that under the law applicable the defendant is estopped from making such a defense.

It will be noticed that the letter of confirmation sent by the plaintiff is headed in bold type: "REPORT IMMEDIATELY ANY ERRORS IN THIS CONFIRMATION." Defendant admits receiving and reading this letter. If it did not contain the correct terms of the contract, it was his duty, when making the first shipment of corn, to inform the plaintiff company of the terms of the contract as he understood them. It is true that he says he wrote and mailed a letter at the time of making this shipment containing the following information: "I stated the number and initial of the car, and that I had shipped it on the sale of December 3, and that I had considerable trouble in getting cars, and that I had other sales I couldn't fill, but, if I received the cars, I would fill their order." The plaintiff denies that it received such a letter, but, if it did, it contained no claim that the contract was different or other than set forth in the plaintiff's letter of confirmation of December 3, and the plaintiff was well warranted in proceeding and conducting its business upon the theory that by January 31 it would have the 10,000 bushels of corn contracted for to fill orders or to meet sales made in the meantime. From the letter of confirmation the defendant must have known that the plaintiff understood the contract in a different sense from what he now claims it to be, and the law is well settled that, if a person by a course of conduct or by actual expressions so conducts himself that one may reasonably infer the existence of an agreement or license, whether the party intends that he shall do so or not, the person so conducting will not be permitted to gainsay the inference. *Viele v. Judson,* 82 N. Y. 32. It is a general

rule, everywhere applied, that he who holds his peace when he ought to have spoken shall not be heard from now that he should be silent. *Bank of United States v. Lee*, 13 Pet. (U. S.) *107; 2 Herman, Estoppel and Res Judicata, sec. 774. The rule was enforced under somewhat different facts in *Emery v. Cobbey*, 27 Neb. 621. At the time of sending its letter of confirmation the plaintiff inclosed a duplicate letter, upon which was printed a request for the defendant to sign and return. The fact that the defendant did not sign this duplicate letter and return it to the plaintiff cannot affect the disposition of the case. Had he signed it and sent it to the plaintiff, the only effect would have been to take the agreement out of the statute of frauds at the date of such signing.

We recommend a reversal of the judgment of the district court and remanding the cause for further proceedings not inconsistent with this opinion.

Epperson, Good and Calkins, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

                                          Reversed.