JOHN N. FRENZER V. ALFRED R. DUFRENE.

FILED APRIL 6, 1899. No. 8661.

1. **Husband and Wife:** CONVEYANCES. A man cannot allege his wife's
recalcitrance to avoid the consequence of failing to perform a
lawful contract made on the assumption that she would join
him in executing a conveyance.

2. **Estoppel.** "Where a party gives a reason for his decision and conduct touching anything involved in a controversy, he is estopped, after litigation has begun, from changing his ground and putting his conduct on another and different consideration." (*Ballou v. Sherwood*, 32 Neb. 666.)

3. **Contracts:** PERFORMANCE. Where stipulations of parties are dependent, and to be performed concurrently, mutual readiness to perform is an essential prerequisite to performance.

4. ———: ———: TENDER. The doctrine of tender, as understood in cases where the relation of debtor and creditor exists, is not applicable to mutual and concurrent promises. In this class of cases a party who has signified his readiness and willingness to perform has done all that he is required to do, until the other party is also ready and willing to perform his part of the agreement.

ERROR from the district court of Douglas county. Tried below before BLAIR, J. *Reversed.*

The opinion contains a statement of the case.

*Will H. Thompson,* for plaintiff in error:

Where defendant assigns a reason for refusing to keep his agreement he cannot base his refusal on other grounds after he has been sued. (*Foley v. Holtry,* 41 Neb. 563; *Ballou v. Sherwood,* 32 Neb. 666; *Ohio & M. R. Co. v. McCarthy,* 96 U. S. 258.)

Plaintiff's offer to cash the note was sufficient. (*Smith v. Lewis,* 26 Conn. 119; *Clark v. Weis,* 87 Ill. 438; *Gould v. Banks,* 8 Wend. [N. Y.] 562; *Wright v. Reed,* 3 Durn. & E. [Eng.] 554; *Duffy v. O'Donovan,* 46 N. Y. 223; *Rawson v. Johnson,* 1 East [Eng.] 203.)

*Howard B. Smith, contra:*

The agent's right to recover commission does not exist until he furnishes a lender able, willing, and ready to make the loan. (*Jones v. Stevens,* 36 Neb. 849; *Barber v. Hildebrand,* 42 Neb. 400; *Mayer v. Ver Bryck,* 46 Neb. 221.)

Plaintiff cannot recover, for the reason that he failed to cash the Spotts note. (*Rice v. Gibbs,* 40 Neb. 264.)

32

SULLIVAN, J.

This action was brought by John N. Frenzer against Alfred R. Dufrene and tried to a jury in the district court of Douglas county. In the first count of the petition, with which alone we are concerned, it is alleged that there is due to the plaintiff from the defendant the sum of $375 on an express contract for services rendered in negotiating with the Penn Mutual Insurance Company for a loan upon Omaha real estate. The defenses relied upon were (1) that the company did not make the loan and was not ready to make it, and (2) the non-performance by the plaintiff of a concurrent promise to cash a $1,500 note executed by Eugene Spotts to Julia Shaw and by her transferred to the defendant. The reply admits that the plaintiff agreed to cash the Spotts note, avers a constant readiness on his part to perform the agreement, and notice to the defendant of that fact. The trial court was of opinion that the evidence was insufficient to warrant a verdict for the plaintiff and peremptorily directed the jury to find against him. The court was wrong and the judgment rendered in favor of the defendant must be reversed.

The evidence either establishes or tends to prove the following facts: The litigants reside in Omaha. The plaintiff is a real estate and loan agent. In 1894 the defendant desired to borrow $18,000 to be used in the construction of buildings upon real estate owned by him. The plaintiff proposed to negotiate the loan for a commission of two and one-half per cent. The defendant accepted the proposition, and his application for an $18,-000 loan, to be secured by a real estate mortgage, was soon after forwarded to the Penn Mutual Life Insurance Company at Philadelphia. The company declined to loan $18,000, but offered to loan $15,000. This offer was eventually accepted in connection with an agreement on the part of Frenzer to cash the Spotts note and thus enable Dufrene to obtain at once the sum of $16,500 to use in

the construction of his buildings.  The application to the loan company provided that the principal and interest of the loan should be paid, "at the option of the lender, in gold coin of the present standard of weight and fineness, or its equivalent." There was some delay in consummating the transaction, owing principally to apparent infirmities in defendant's title to the property offered as security, so that before the bond and mortgage were ready for execution Frenzer, in fulfillment of a prior engagement, was obliged to make a trip to the state of California.  In his absence his clerk, M. Grocox, was authorized to act for him.  About April 10 the bond and mortgage were prepared and handed to the defendant for examination.  He made some objection on account of the gold clause, but a day or two later handed the papers to Mr. Grocox to be sent to the loan company for examination and approval.  The company returned them about April 20, when they were delivered to the defendant to be signed and acknowledged.  They were received for that purpose without objection.  Not being presently returned, Grocox called at Dufrene's office and also at his residence several times to get them.  He did not succeed in his purpose, but Dufrene informed him that they had not been signed; that Mrs. Dufrene was reluctant to sign on account of the gold clause, but that she would probably sign in a few days.  The defendant also suggested that Grocox should not call again at the house until informed that the papers were ready for delivery. The papers were afterwards signed, but were not acknowledged or delivered, and nothing further was ever done by the defendant to bring the matter to a conclusion. When the note and mortgage were ready for delivery they were to be handed to the law firm of Montgomery, Charlton & Hall, who were thereupon to wire their client, the loan company, to forward the money.  On May 3 Mr. Hall inquired of Dufrene why the loan had not been closed, and was informed that Mrs. Dufrene had not yet signed the papers.  No other reason was given.  On May

Frenzer returned to Omaha and at once wrote to the defendant to know why the loan had not been closed and offering to cash the Spotts note. Dufrene did not reply. About May 26 the parties had a conversation, in which the defendant assigned as his only reason for not closing the loan that he objected to the gold clause and his wife refused to sign the mortgage. On June 4 Dufrene told Frenzer that he might yet close the loan and would let him know definitely in regard to the matter by the following Thursday. As late as June 18 the loan company was ready to close the loan. Plaintiff has been ever ready to take the Spotts note. These are the facts which the jury might have found from the evidence; and they are quite sufficient to sustain a judgment in favor of the plaintiff. They show that Frenzer procured a lender ready, able, and willing to loan him $15,000, and that he refused, without adequate reason, to deliver the securities which he agreed to furnish. They show that in the first instance he refused to execute a mortgage containing a gold clause, but that he subsequently assented to the mortgage in the form in which it was submitted to him for execution. The refusal of Mrs. Dufrene to sign the papers does not, of course, release the defendant from his agreement to pay Frenzer for the services which he performed. A man cannot plead his wife's recalcitrance in avoidance of a lawful contract. The defendant now insists that he had other reasons for not executing the bond and mortgage to the insurance company. He assigned no other reason before the action was commenced, and it is a justifiable deduction that no other existed. The other reasons referred to did not occur to him while the negotiations were pending, and are obviously mere pretexts by which he now hopes to go scatheless out of a just contract which he is unwilling to perform. In *Ohio & M. R. Co. v. McCarthy*, 96 U. S. 258, it was said: "Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground,

and put his conduct upon another and different consideration. He is not permitted, thus to mend his hold." This doctrine is distinctly approved in *Ballou v. Sherwood,* 32 Neb. 666, and has been frequently enforced in other jurisdictions.

But it is contended that if the plaintiff produced a lender ready to make the $15,000 loan, still he was not entitled to his commission until he cashed the Spotts note or at least tendered performance of that branch of the contract. Yielding provisional assent to this proposition let us see how the matter stands on the evidence. The plaintiff was in fact prepared to take the Spotts note at a price agreed upon, and he so advised the defendant and asked to be notified by telephone, or otherwise, whenever the defendant was ready to proceed with the business. The defendant at no time signified a readiness to transfer the note or assign the mortgage securing it. It is claimed, however, that the defendant was not in default because Frenzer failed to make an actual tender of $1,500 in current funds. We think a tender such as is contemplated by the law governing the relation of debtor and creditor is not at all applicable to cases of this kind. The stipulations of the parties were dependent. They were to be performed concurrently and mutual readiness to perform was an essential prerequisite to performance. Frenzer was ready to pay Dufrene $1,500, but he was not required to hand it over before receiving the Spotts note. He was not required to make an unconditional tender. He was not, after having signified his readiness, required to do anything until informed that the other party to the contract was also ready to carry it into execution. (2 Parsons, Contracts [6th ed.] *528; *Clark v. Weis,* 87 Ill. 438; *Smith v. Lewis,* 24 Conn. 624, 26 Conn. 110.) In the last mentioned case it is said: "Some misapprehension or confusion appears to have arisen from the mode of expression used in the books in treating of the necessity of a tender or offer by the parties, as applicable to the case of mutual and concurrent promises. The word 'tender,'

as used in such a connection, does not mean the same kind of offer as when it is used with reference to the payment or offer to pay an ordinary debt due in money, where the money is offered to a creditor who is entitled to receive it and nothing further remains to be done, but the transaction is completed and ended; but it only means a readiness and willingness, accompanied with an ability on the part of one of the parties, to do the acts which the agreement requires him to perform, provided the other will concurrently do the things which he is required by it to do, and a notice by the former to the latter of such readiness. Such readiness, ability, and notice are sufficient evidence of, and indeed constitute and imply, an offer or tender in the sense in which those terms are used in reference to the kind of agreements which we are now considering. It is not an absolute, unconditional offer to do or transfer anything at all events, but it is in its nature conditional only, and dependent on, and to be performed only in case of, the readiness of the other party to perform his part of the agreement." In the case at bar the agreement of the parties with reference to the Spotts note was never carried into execution, because there never was a concurrent readiness to perform. Dufrene never responded to Frenzer's notification that he was prepared to fulfill his promise; and this failure to respond was unquestionably sufficient to discharge the plaintiff from the obligation which the contract imposed. But was there not another circumstance which produced precisely the same result? Remembering that the cashing of the Spotts note was a mere complemental transaction,—an indispensable incident of the loan,— the inference would seem warranted that its performance as an independent contract was never contemplated by either party, and that when the principal contract was abandoned it was intended that its accessory should be abandoned with it. However, as this question has not been discussed, we express no final opinion in regard to

· it.   The judgment is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.