JAMES M. PRIME, APPELLEE, v. WAITE H. SQUIER, APPELLANT.

FILED MAY 1, 1925. No. 23081.

1. **Appeal: RESCISSION: PLEADING AND PROOF.** *Held,* in this case that a cause of action in rescission was alleged and proved

*prima facie*, both on fraudulent representation and on contract of guaranty; and *held*, further, that both theories were submitted on proper instructions by the trial court, and without error in the reception or rejection of evidence.

2. Contracts: TIME OF PERFORMANCE: PAROL AGREEMENT. At any time before breach, the parties to an executory agreement may change its terms as to time of performance by subsequent parol agreement, without new consideration.

3. ———: RESCISSION: TENDER. That which the attitude of the party to whom tender is due unmistakably shows to be vain and useless may be dispensed with in the making of tender in rescission cases.

4. Appeal: CONFLICTING EVIDENCE. In law cases, a finding of fact upon conflicting evidence will not be disturbed by the court of review unless the same is clearly wrong.

APPEAL from the district court for Douglas county: ARTHUR C. WAKELEY, JUDGE. *Modified and remanded, with directions.*

*Montgomery, Hall & Young*, for appellant.

*Kennedy, Holland, DeLacy & McLaughlin*, contra.

Heard before MORRISSEY, C. J., ROSE, GOOD, and EVANS, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

Though he had been solicited by Squier for more than a year, Prime refused to buy stock in the Onahman Iron Company until the former agreed in writing to return the purchase price, less dividends, if upon inspection he was not entirely satisfied that the property was as he had been led to believe. Then he bought 1,250 shares at $3 a share, paying $3,750 for the block. Within the time agreed upon, as extended, he visited the mine and was not satisfied. He immediately so reported to Squier, and, having asked in vain for the return of his money, he tendered back the stock and sued in rescission. A jury gave him a verdict, but upon appeal to this court his judgment was reversed because the trial court instructed that naked proof that he was not satisfied upon inspection was enough to entitle him to recover, while a proper instruction in that regard would

have required him to prove, in addition thereto, that he had reasonable ground for his dissatisfaction. *Prime v. Squier,* 105 Neb. 766.

A second trial, in which he attempted to show that the representations made were false, and that his inspection disclosed good grounds for dissatisfaction, resulted in a similar verdict and judgment, which are now here for review.

It was alleged by plaintiff in the petition that, among other things, the defendant falsely represented to him when he purchased the stock, July 12, 1917, that the company was well managed, prosperous, and successful; that it had cash earned and in hand out of which to pay dividends of 5 per cent. a month for the rest of the year; and that none of the stock could be bought at less than three for one. The petition further stated what appears to be a good cause of action in and of itself on the letter or contract in writing above referred to, which letter and contract reads as follows:

"Dear Doctor: In consideration of the purchase through me of 1,250 shares of the stock of the Onahman Iron Company, for which you have paid me $3,750, I hereby guarantee to return to you the amount so paid me, less any dividends on the stock you may have meantime received, if prior to October 1, 1917, after a visit to the mine and a careful inspection of same, you are not entirely satisfied the property is all that you have been led by me and others to understand it is. The same to be paid to you upon due transfer to me of your said stock. Very truly, Waite H. Squier."

It is further alleged in connection with this writing that the time of visiting the mine was duly extended to the time when the same was actually visited and inspected. Then followed appropriate allegations as to plaintiff's dissatisfaction and cause of dissatisfaction, his fruitless demand upon Squier, and his tender, etc.

The assignments of error of the defendant and appellant include a complaint that the trial court refused to permit

defendant to introduce photographs of stock-piled ore at the mine in April and August, 1917. There was no reversible error in this. The time in question was July 12, while the pictures were taken in April and August. There was no sufficient foundation for the introduction of the pictures by showing the manner of taking them, the setting of the camera, the distances, the directions and other things necessary to an understanding of the same. But, even if this were not so, even if the photographs should have been received, the presence of such ore at the times when the photographs were taken was established by oral evidence without dispute. The court must conclude, in the absence of anything to indicate otherwise, that what was established by undisputed evidence would not be subject to doubt in the mind of the jury.

It is also assigned that the court erred in instructing that the time for visiting and inspecting the mine was duly extended. This question seems to have been disposed of adversely to the appellant in the decision of this court heretofore referred to. It is probably as much the law of the case that due extension was had as it is that the plaintiff could not arbitrarily decide that he was not satisfied upon inspection of the mine. The court said: "The plaintiff did not inspect the mine until May, 1918, his trip having been deferred by mutual consent." *Prime v. Squier,* 105 Neb. 766. But, in addition to this, the parties may change the terms of an executory agreement before breach by subsequent parol agreement, and without new consideration. *Bowman v. Wright,* 65 Neb. 661; *Moore v. Markel,* 112 Neb. 743. Moreover, the defendant did not refuse to return plaintiff's money on the ground that this agreement in regard to inspection had been broken. He ought not to be permitted to assert such a reason at this time. *Ballou v. Sherwood,* 32 Neb. 666. Squier gave the plaintiff a letter expressly stating that he might make his visit and inspection at the time he did. He should not be permitted to repudiate his letter and agreement. *Teasdale Commission Co. v. Keckler,* 84 Neb. 116.

In another assignment defendant declares that the court ·erred in describing in one of its instructions a representation that "dividends of 5 per cent. a month would commence immediately" as an actionable representation, because it was a statement of something to take place in the future, and not a statement of existing fact. If there was error in this, which we somewhat doubt because the representation was said to have been made in connection with the further representation that money was earned and set apart to pay dividends at 5 per cent. a month for the rest of the year, it was not reversible error; for it appears without ·question that such dividends were immediately commenced, though not continued through succeeding months. There was a dividend payment in the month of July. The jury ·could not have been misled to the defendant's detriment by this instruction.

In tendering back the stock and the dividends received thereon, the plaintiff had the stock with him, told the defendant so, and offered to give it to him and to pay back the dividends which he had received. But defendant refused to accept the same and said that he would not return plaintiff's money. Plaintiff did not manually offer the certificate to the defendant and did not produce and hand him any money. It is insisted in a further assignment of error that this was not a sufficient tender. This court has many times held that under similar circumstances such a tender was sufficient, it being unnecessary to press the thing tendered upon a party when the party declares that he will not receive it. And in all of the Nebraska Building & Loan Association cases, practically without exception, though the dividends were not produced and tendered back, it was held by the court that such tender was not required. That which the attitude of the party to whom tender is due unmistakably shows to be vain and useless may be dispensed with in rescission cases of this kind.

The point is made in appellant's brief, upon due assignment of error, that the phrase, "if you are not entirely satisfied the property is all that you have been led to be-

lieve," limited the matter of inspection to the mine itself, and that the guaranty had reference only to the physical conditions of the mine, and not to the management of the company or the financial condition of the same. This is too narrow a construction. The word "property" refers, we think, to the whole thing, the company, its mines, its assets, and its management. Upon this view, the assignment of error in connection with instruction No. 6 falls to the ground.

In close relation to this is the contention of the appellant that the court erred in permitting the plaintiff to testify to the statement of McLaren, who told him upon his inspection of the mine, if his testimony be taken as true, that if he would not demand his money back they would take him in on their next promotion project. Objection is made to this upon the ground that it was prejudicial, and not competent or proper testimony in the case. It has its bearing, however, upon the question of sound and safe management, and was entitled to be received for what it was worth in showing the nature of the management and the character of the concern.

We are also of opinion that the court committed no error in receiving the testimony of the plaintiff in regard to the value of the stock on the 12th of July, 1917, the date of his purchase from Squier. It appeared that within a few months after that time he could and did buy such stock at from $1.65 to $2.50 a share. As in the other instance, this evidence was admissible for what it was worth; the time not being too remote to render it altogether valueless in determining whether or not the stock of the company could be purchased on the 12th day of July for less than $3 a share.

Very ingeniously, and at great length, the appellant argues in his brief that the evidence was insufficient to sustain the verdict, insisting that the company was a strongly going concern when plaintiff purchased the stock; that there was no proof at all that at that time it did not have all of the money, all of the property, all of the business, and all of

Prime v. Squier.

the prospects for the future which the defendant had claimed; also, that the plaintiff had no more to support him in his suit than that, after a lapse of time, the general depression had overtaken the mine and made it unprofitable. But the court entertains no doubt, after a careful consideration of the record, that there was evidence enough to support the verdict upon either of the two theories pleaded in the petition and considered in the instructions.

There was no evidence that the company had money set aside or in the treasury for the payment of dividends of 5 per cent. a month for the rest of the year 1917. There was evidence that it did not have this money. Indeed, the court might well say from the record that it had no such sum at the time that said representations were made. Without regard to the guaranty, therefore, there was sufficient evidence, supposing that steps to rescission were duly taken, to warrant the jury in returning the verdict rendered. In a law case, a finding of fact upon conflicting evidence will not be disturbed by this court unless the same is clearly wrong.

On the other branch of the case, it appears from the evidence that, when the plaintiff visited the mines in May of 1918, he found that some of the workings were full of water, and that only about 15 men were employed; that there was no accumulation of ore on hand, and that very little was being produced. Again, taking the testimony of the plaintiff as true, as the jury had a right to do, there was not enough in sight to satisfy him that the concern was a rich, prosperous, and successful concern such as he had been led to believe it to be. There was enough to be seen to justify him, as a reasonable man, in not being satisfied that the concern was all that he had been led to believe it was. And the significant conversation with its president, before alluded to, gave him further reasonable ground for dissatisfaction.

We have examined the instructions carefully in connection with the objections raised by the appellant and are convinced that they properly, and indeed admirably and

without confusion or contradiction, present the dual theory upon which plaintiff was entitled to recover. Not only was he permitted to prevail if false representations of material existing fact with respect to the. company were made to him by Squier to induce him to purchase, but he was likewise permitted to prevail if upon inspection he was not satisfied that what he had been led to believe was true, provided there was a reasonable basis for his conclusion in this regard. He presented ample proofs to support a recovery upon the latter theory. For it is not to be doubted that the guaranty greatly enlarged the ground of his recovery, basing his right thereto, not narrowly upon fraudulent representations of material fact, but broadly upon reasonable disbelief (upon inspection) of anything which he had in any manner been led to believe, either by the defendant or others.

Having determined that the trial was without error in the reception of the evidence and in the giving of the instructions, it follows that the verdict must stand in the main. It appears from the record, however, that the plaintiff did not return to the defendant the dividends which were received upon the stock purchased. These dividends amounted to the sum of $562.50, which, with interest at the rate of 7 per cent. per annum from July 12, 1917, should be deducted from the judgment entered. So modified, the order appealed from is affirmed, and the cause is remanded to the district court, with instructions to correct the judgment in accordance with this opinion.

Modified, and remanded, with directions.