JOHN W. SWANSON, APPELLANT, V. ALFRED MADSEN ET AL., APPELLEES.

18 N. W. 2d 217

FILED APRIL 6, 1945. No. 31824.

*Ritchie & Swenson,* for appellant.

*Smith & Schall, Edward Garvey* and *Richard E. Robinson, contra.*

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL and WENKE, JJ.

CARTER, J.

This is an action for the strict foreclosure of a real estate contract dated September 15, 1934. The defendants cross-petitioned for the specific performance of an alleged subsequent contract for the sale of the real estate to them at a lower price. The trial court denied plaintiff's claim to a strict foreclosure and sustained defendants' claim for specific performance. The plaintiff appeals.

The record shows that on August 29, 1928, Ellna Swanson and John A. Swanson contracted in writing to sell the real estate in question, together with certain personal property not particularly described in this suit, to Alfred Madsen, who will hereinafter be referred to as the defendant, for the sum of $42,000, $10,000 of which was paid in cash and the balance to be paid in installments as provided in the contract. The installments provided for in this contract became delinquent and on September 15, 1934, a new contract was executed by Ellna Swanson, then a widow, and Alfred Madsen. The amount remaining unpaid at that time under the original contract was $29,520. By the new agreement defendant agreed to pay $720 in cash and $250 a month for two years, $350 a month for the following two

years and $450 a month thereafter until the amount due was paid. The defendant made payments totaling $2,767.26 on this contract, after which he was continuously in default.

On June 22, 1938, a further agreement was entered into in writing purporting to modify the agreement of September 15, 1934, in which it was agreed that all payments due were to be suspended until March 1, 1940. The contract then provided that if defendant desired to complete the purchase on March 1, 1940, he should notify Ellna Swanson not less than 30 days prior thereto and upon receipt of the notice three appraisers were to be appointed to determine the value of the property, which amount thus determined, Ellna Swanson agreed to accept as a full payment under the contract. In case of failure to make payment by March 1, 1940, in the manner agreed upon, defendant was to yield possession of the premises and execute a quitclaim deed to Ellna Swanson as of that date. The defendant failed to give any notice more than 30 days prior to March 1, 1940, of any intention on his part to acquire the property in the manner prescribed in the supplemental agreement of June 22, 1938.

Defendant testifies that a few days before March 1, 1940, he went to the office of the plaintiff's attorney and offered $10,000 in full satisfaction of the remainder of the purchase price. Plaintiff's attorney agreed to submit the offer to his client. Defendant was notified about a month later that the amount was not acceptable. On April 18, 1940, plaintiff's attorney inquired of defendant by mail as to his intentions in the matter. A day or two later defendant went to the attorney's office and offered $11,000 in full settlement. This amount was not accepted. Defendant requested that legal proceedings be held up pending another offer on his part. On or about August 15, 1940, defendant offered $12,000 to plaintiff's attorney in full settlement. On January 21, 1941, plaintiff's attorney advised defendant that Ellna Swanson would accept $12,000 cash in full settlement under the contract, provided it was paid by February 15, 1941, and that unless it was paid on or before that date defendant would be expected to vacate the property in accordance with the

1934 contract. Defendant testifies that he took the matter up with two loan agencies and received promises for the money to pay the $12,000. On February 12, 1941, he went to the attorney's office to inform him of the arrangements made and to secure the abstract of title, but found the attorney out of town. He again called the attorney's office on February 15, 1941, but the attorney had not returned. On February 17, 1941, defendant found the attorney in his office and was informed by the attorney at that time that Ellna Swanson was dissatisfied in that she had advanced $2,000 to defendant which had not been paid and that she wanted it returned in addition to the $12,000. On March 8, 1941, it was ascertained to the satisfaction of the parties that the $2,000 had been repaid to Ellna Swanson and that item was withdrawn from the negotiations. Nothing further was done until March 20, 1941, when defendant was informed that Ellna Swanson would accept nothing less than $15,000 as full settlement of the contract. It is the contention of the defendant that he is entitled to the specific performance of the alleged agreement of Ellna Swanson to accept $12,000 in full settlement of the amounts due under the contract dated September 15, 1934. The trial court so held and plaintiff, the assignee of Ellna Swanson's interest in the contract, appeals from the district court's decree requiring plaintiff to accept $12,000 as full settlement of the amount due under the contract.

The record is clear that on January 21, 1941, the date Ellna Swanson offered to accept $12,000 as a full settlement, defendant had breached his contract by failing to comply with the supplemental agreement of June 22, 1938, or to make the payments required by the agreement of September 15, 1934. Defendant's offer to pay $12,000 in full settlement of the amounts due under the contract was nothing more than an offer of settlement which Ellna Swanson accepted provided it was paid by February 15, 1941. It was not paid or tendered by that date. It appears that plaintiff's attorney was absent from his office on February 15, 1941, and for a few days prior thereto, but we fail to see

how this can avail the defendant anything in view of the fact that he did not pay or tender the $12,000 after the attorney's return. It seems clear, therefore, that defendant's offer was conditionally accepted by Ellna Swanson and defendant, having failed to meet the condition imposed, can claim no rights under it. We conclude that the offer of settlement was never complied with by the defendant and consequently no rights can grow out of it. The modification agreement of June 22, 1938, was not complied with by defendant, with the result that the liability of defendant under the terms of the modification agreement itself was again fixed by the contract of September 15, 1934.

Defendant contends that a contract required to be in writing by the statute of frauds can be altered or modified by parol agreement and that the consideration for the original agreement is sufficient to sustain the new. We think this is true where there has been no breach of an executory contract, but where, as here, the contract had been breached at the time of the modification, a new consideration must be shown. *Bowman v. Wright,* 65 Neb. 661, 91 N. W. 580; *Prime v. Squier,* 113 Neb. 507, 203 N. W. 582; *Personal Finance Co. v. Hynes,* 130 Neb. 547, 265 N. W. 541. The rule is also clear that a contract required to be in writing by the statute of frauds can be modified by a new agreement only when such new agreement is supported by a new consideration, or where it has been fully executed. *Bowman v. Wright, supra; Hylton v. Krueger,* 138 Neb. 691, 294 N. W. 485. The evidence is clear that no new consideration existed for the agreement to accept $12,000 in full settlement of the amount due under the contract. The rule is that an agreement to pay a smaller sum in discharge of a larger matured obligation does not constitute any consideration for an agreement to forego the residue. *Fitzgerald v. Fitzgerald & Mallory Construction Co.,* 44 Neb. 463, 62 N. W. 899; *Canadian Fish Co. v. McShane,* 80 Neb. 551, 114 N. W. 594. The evidence further shows that such new agreement was never performed. It further shows that defendant had breached his contract and that he was in default at the time

of the purported settlement agreement. Under such circumstances, under the authorities cited, the agreement evidenced by plaintiff's letter of conditional acceptance dated January 21, 1941, is not enforceable and creates no new rights of which the defendant can avail himself. Consequently, the trial court erred in granting specific performance of such agreement.

The question next presented is whether plaintiff is entitled to a strict foreclosure of the contract dated September 15, 1934. The record shows that at the time the contract was made the sum of $29,520 was due thereon. The total amounts paid thereon amount to $2,767.26. After crediting this amount there was due on the contract at the time of the trial in August, 1943, the sum of $38,282.74. The evidence indicates that the property was not worth to exceed $24,000 at the time of the trial. The rental value of the property from 1933 to 1943 inclusive was approximated at $9,453.33. It is quite evident that the defendant has no equity in this property under the record made. In our opinion, the failure of defendant to make any payment thereon since June 1, 1938, or to comply with the supplemental agreement of June 22, 1938, constitutes an abandonment of the contract. His attempts to purchase the property at a reduced price after such abandonment are not in conflict with this view. They in fact indicate an attempt to negotiate a new contract after an abandonment of the old.

We think the rule is that a contract for the purchase of real estate may be strictly foreclosed where it is clear that the property is of less value than the contract price and that it would not bring a surplus over and above the amount due if a sale were ordered, and where such procedure would not offend against justice and equity. Courts of equity will decree a strict foreclosure only under special circumstances where it would be inequitable and unjust to refuse them. Whether or not such a decree will be granted is dependent upon the facts of the particular case being considered and is necessarily addressed to the sound judicial discretion of the court. *Harrington v. Birdsall,* 38 Neb. 176, 56 N. W. 961.

But where such a decree is entered, the defaulting party is entitled to a reasonable time to avoid its consequences by performing the contract. *Patterson v. Mikkelson,* 86 Neb. 512, 125 N. W. 1104. The evidence shows that the present case falls within this rule and that plaintiff is entitled to have the contract of sale strictly foreclosed. It is the order of this court, therefore, that unless the defendants pay the amounts due under the contract of September 15, 1934, within 60 days from the issuance of the mandate of this court, the defendants, and each of them, be decreed to have no right, title or interest in and to the real estate herein involved by virtue of any or all of the contracts contained or referred to in the pleadings of the parties to this suit.

REVERSED.

SIMMONS, C. J., dissenting.

I am in disagreement with the majority as to the issues presented here, as to the construction of the evidence, and as to the law to be applied. For purposes of clarity, I use the term "plaintiff" to include also Ellna Swanson, plaintiff's predecessor in interest. For further purposes of identification, the use of the word "defendant" in the singular applies to the defendant, Alfred Madsen. I shall also follow in the order advanced the discussion and holding of the majority.

The majority, in setting out the issues, state: "It is the contention of the defendant that he is entitled to the specific performance of the alleged agreement of Ellna Swanson to accept $12,000 in full settlement of the amounts due under the contract dated *September 15, 1934. The trial court so held* and plaintiff, the assignee of Ellna Swanson's interest in the contract, appeals from the district court's decree requiring plaintiff to accept $12,000 *as full settlement of the amount due under the contract."* (Emphasis supplied.) This is not a correct statement of the issue nor the decree. The defendant specifically pleaded that he offered and plaintiff agreed to accept "the sum of $12,000 as the value of said real estate on March 1, 1940, in lieu of determining the value thereof by an appraisal, * * * ." The evidence, as the

majority recognize, supports this allegation. Defendant's case rests upon the obligation of the plaintiff to perform the 1938 contract, as modified as to manner of determining what price should be paid, and the agreement upon the price to be paid under the 1938 contract. The trial court so recognized the issue. Contrary to the statement of the majority, the trial court held and decreed "that said Ellna Swanson's agreement of June 1, 1938, as supplemented by her said agreement of January 21, 1941, be specifically performed, * * * ."

The majority also state: "The trial court *denied plaintiff's claim to a strict foreclosure* and sustained defendants' claim for specific performance." (Emphasis supplied.) After decreeing specific performance to the defendant, and specifying the terms of the order, the trial court decreed that if the defendant, Alfred Madsen, failed to make the payment within the time specified "defendants and each of them be forever barred of their rights to specific performance" and defendant Alfred Madsen's "purchase agreements be cancelled and annulled and defendants and each of them and all persons claiming through or under them be forever barred and foreclosed of all rights and claims in and to said real estate, and forthwith surrender possession of said premises to plaintiff." The parties construe the decree as one of strict foreclosure in the alternative. As a result of the appeal, plaintiff making no assignments of error as required by Rule 14 a 1 (d), the only questions presented for determination here go to that part of the decree granting specific performance to the defendant.

The majority in their brief summary of the evidence make two statements that I consider material and erroneous. They state that defendant testified that a few days before March 1, 1940, he offered $10,000, "in full satisfaction of the remainder of the purchase price." Defendant's testimony on direct examination was that he talked to plaintiff's attorney to see "if there wasn't a way to get together on the settlement, rather than an arbitration on this, and he asked what was on my mind and I told him that I could raise

$10,000.00 if it would take care of it, * * * ." On cross-examination, he testified: "I asked you if there wasn't a chance to arrange it some way rather than go to the expense of having some appraisal made and I offered you the $10,-000.00 * * * ." So there can be no question but that the offer was made in lieu of a price which the 1938 contract provided should be determined by arbitration.

The majority further state: "Defendant requested that legal proceedings be held up pending another offer on his part." The written evidence, consisting of a letter from plaintiff's attorneys, shows that legal proceedings were held up at the request of Mr. W. O. Swanson, speaking for Ellna Swanson, the then titleholder of the land.

There are two conflicting theories advanced by the parties in this case. The defendant's theory is that the provision calling for the completion of the purchase on or before March 1, 1940, was waived by the parties; that thereafter they were negotiating a price to be paid as of March 1, 1940, in lieu of determining the price by appraisal; that the price was subsequently agreed upon by the parties; and that defendant is entitled to specific performance of the 1938 agreement as so modified. The plaintiff's theory is that when the defendant failed to complete the purchase on March 1, 1940, the defendant's rights and duties were controlled by the 1934 contract; and that the negotiations subsequent to March 1, 1940, and the agreement of January 21, 1941, were negotiations for and the making of a separate, independent agreement.

The majority dispose of the question of breach with the brief statement that "The record is clear that on January 21, 1941, the date Ellna Swanson offered to accept $12,000 as a full settlement, defendant had breached his contract by failing to comply with the supplemental agreement of June 22, 1938, or to make the payments required by the agreement of September 15, 1934." I submit that the record is not "clear" that defendant had breached his 1938 contract and on the contrary establishes that there was no breach available to plaintiff.

What was the 1938 contract, and was there an actionable breach? Plaintiff there agreed to convey the property to the defendant at a price to be agreed upon by appraisers. The 30 days' notice was not given, nor were the appraisers appointed. That notice and that method were waived by the parties when they substituted direct negotiation for determining the price. Obviously as a result of the pendency of those negotiations, performance was not expected nor required by March 1, 1940. Obviously also the parties did not consider the 1938 contract as breached on March 1, 1940. Every bit of evidence in this record shows that the parties considered the 1938 contract in force and effect thereafter, and were amicably negotiating as to the price to be paid. The letter of April 18, 1940, was written 49 days after March 1, 1940, and clearly upon the supposition that the 1938 contract was in force, for it refers to that contract, its terms, and asks the defendant to drop in and see what should be done. The letter of August 3, 1940, calls upon the defendant to "live up to" his "agreement of June 1, 1938," or suffer litigation. As a result of that letter, which most certainly considered the 1938 contract as still in effect, the offer to pay $12,000 was made, which was accepted on January 21, 1941. The plaintiff, in writing, has recognized that there was no breach of the 1938 contract prior to January 21, 1941, and that extensions of time for performance had been granted, for, in the letter of that date, plaintiff said: "No further extensions in the matter will be granted * * * ."

The refusal to accept $12,000 on February 21, 1941, was not based upon either a breach, or inadequacy of tender or amount, but upon plaintiff's insistence that defendant owed her $2,000 on another item and she wanted that paid at the same time. It was still being treated as in effect on March 7, 1941, when plaintiff, in writing, called upon the defendant to take care of taxes which were delinquent. The first indication in this record that the plaintiff considered the 1938 agreement breached was when this action was brought in January, 1943.

Now then, what is the rule of law that is applicable here?

Assuming that plaintiff, as he argues here, had the right to consider time of the essence and to declare the 1938 contract terminated because of failure of the defendant to give the required notice and to perform punctually, he clearly elected not to do so. In that sense his election constituted a waiver. 3 Williston, Contracts (Rev. ed.), sec. 679, p. 1960. The rule is: "While he may not waive stipulations in favor of the other party, a party to a contract may waive its provisions for his benefit and may elect not to take advantage of a breach. So, although there may have been repeated violations of a contract by either party, yet, if either party elects to consider it unbroken and proceeds under it, the other cannot be considered as having been in default." 17 C. J. S., sec. 491, p. 992. See, also, 13 C. J., sec. 764, p. 670; 12 Am. Jur., sec. 354, p. 919. "Election as a term in the law is properly applied to a case where a person has the choice of one or two alternative and inconsistent rights or remedies. In choosing the one, he necessarily surrenders the other. This principle is not out of harmony with the general rule that the surrender of a right requires a sealed release or consideration, because the choice made by election gives the one making it an advantage which he could not otherwise have had. Though he surrenders one right, he gains or keeps by so doing another and inconsistent right. Thus where a contract is broken in the course of performance, the injured party has a choice presented to him of continuing the contract or of refusing to go on. If he chooses to continue performance he has doubtless lost his right to stop performance; but in the nature of the case he could not exercise the two inconsistent rights of which he had the choice." 3 Williston, Contracts (Rev. ed.), sec. 683, p. 1969. See, also, 1 Restatement, Contracts, sec. 309, p. 456. "The principle is general that wherever a contract not already fully performed on either side is continued in spite of a known excuse, the defense thereupon is lost and the injured party is himself liable if he subsequently fails to perform, unless the right to retain the excuse is not only asserted but

assented to." 3 Williston, Contracts (Rev. ed.), sec. 688, p. 1983. See *Emigrant Industrial Savings Bank v. Willow Builders, Inc.*, 290 N. Y. 133, 48 N. E. 2d 293.

This court has held that " 'A written contract may be waived in whole or in part, either directly or inferentially, and the waiver may be proved by express declarations manifesting the intent not to claim the advantage, or by so neglecting and failing to act as to induce the belief that it was the intention to waive.' *Fairbanks Morse & Co. v. Nelson,* 217 Fed. 218." *Advance-Rumely Thresher Co. v. Bartzat,* 114 Neb. 35, 206 N. W. 7. This rule has been applied by this court to a situation somewhat similar to the one at bar. See *Alpirn v. H. Epstein & Son,* 138 Neb. 311, 293 N. W. 103.

The majority next state that defendant did not comply with the agreement as evidenced by the letter of January 21, 1941, and hence has no rights under it. This is bottomed on the proposition that defendant did not pay or tender the $12,000 on February 15, 1941. I think they are in error.

The January 21, 1941, letter of the plaintiff did not require the defendant to pay or tender the $12,000 on February 15, or any fixed date. The language of the letter is: " * * * if you will pay $12,000 cash for the place, she (plaintiff) prefers to sell, rather than to have further trouble with it. You indicated sometime ago you would raise this amount of money and I am giving you until February 15th to get this done." Get what done? Raise the money. That the defendant did before February 15. He was prevented from so advising plaintiff's attorney by reason of the latter's absence. He so advised the attorney's office prior to that date. Obviously it was contemplated that a reasonable time would elapse thereafter during which the transaction would be completed. There is no indication that the parties contemplated that the transaction would be completed on that day.

It also is to be remembered that it was not a one-sided agreement that was to be performed on that date. It was not an "I owe you $5,000 and will pay $1,000" agreement. Plaintiff held the abstract to this property. By the con-

tracts, plaintiff was obligated to furnish that abstract to the defendant. The 1938 contract provided that the plaintiff " * * * shall deliver to the second party (defendant) abstract of title brought down to the date of completion of said transaction, showing merchantable title in her, * * * ." Defendant, prior to February 15, had gone to the attorney's office and asked for the abstract; the attorney had asked the plaintiff for it, so that he could give it to defendant, and had not received it; and on February 17 the attorney was unable to deliver it and so stated. Not only was plaintiff required to deliver the abstract, but plaintiff knew that delivery was necessary in order that defendant could secure the funds with which to make the payment. Plaintiff not only did not have a deed ready for delivery, but, demanding more money, she was unwilling to deliver a deed. Plaintiff had obligations of performance as well as defendant. This court dealt with such a situation in *Frenzer v. Dufrene,* 58 Neb. 432, 78 N. W. 719, wherein it was held: "Where stipulations of parties are dependent, and to be performed concurrently, mutual readiness to perform is an essential prerequisite to performance." And "The doctrine of tender, as understood in cases where the relation of debtor and creditor exists, is not applicable to mutual and concurrent promises. In this class of cases a party who has signified his readiness and willingness to perform has done all that he is required to do, until the other party is also ready and willing to perform his part of the agreement." In the case of *Prime v. Squier,* 113 Neb. 507, 203 N. W. 582, a case cited and relied upon by the majority later in their opinion, error was assigned in that the party seeking rescission "did not produce and hand him any money." It was insisted that this was not a sufficient tender. This court said it was " * * * unnecessary to press the thing tendered upon a party when the party declares that he will not receive it. * * * That which the attitude of the party to whom tender is due unmistakably shows to be vain and useless may be dispensed with * * * ."

The furnishing of the abstract and a readiness to convey

obviously was required before payment could be exacted. In *Householder v. Nispel,* 111 Neb. 156, 195 N. W. 932, this court quoted and followed the principle of law taken from *Williams v. Bank of the United States,* 2 Pet. (U. S.) *96, that "If a party to a contract, who is entitled to the benefit of a condition, upon the performance of which his responsibility is to arise, dispense with, or by any act of his own, prevent, the performance, the opposite party is excused from proving a strict compliance with the condition." Attention also is called to the rule that "In a suit for specific performance of a contract for the sale or purchase of land, considerable delay in tendering performance does not preclude enforcement of the contract where the delay can be compensated for by interest on the purchase money or otherwise, unless (i) the contract expressly states that performance at or within a given time is essential, or (ii) the nature of the contract, in view of the accompanying circumstances, is such that enforcement will work injustice." 1 Restatement, Contracts, sec. 276, p. 407.

And further it may be said that the plaintiff did not consider the contract breached then or thereafter because of the manner or sufficiency of the tender. Plaintiff argues here, however, that defendant did not have the promise of sufficient money, a question of fact which the majority resolve against the plaintiff. Under these circumstances a breach, because of failure to tender $12,000 in cash, is not sustained.

I therefore submit that the defendant did comply with the terms of the letter of January 21, 1941, made the necessary tender and was prevented from concluding that agreement because of the unwillingness of the plaintiff to perform. Plaintiff should not now be permitted to profit by her own wrong.

The majority take up a contention of the defendant that " * * * a contract required to be in writing by the statute of frauds can be altered or modified by parol agreement and that the consideration for the original agreement is sufficient to sustain the new"; and hold that the contention

" * * * is true where there has been no breach of an executory contract, but where, as here, the contract had been breached at the time of the modification, a new consideration must be shown." They then state: " * * * a contract required to be in writing by the statute of frauds can be modified by a new agreement only when such new agreement is supported by a new consideration, or where it has been fully executed."

I am unable to reconcile the two rules so announced. If the first rule is correct and is to be applied, then the parol agreement established by the evidence and the letter of January 21, 1941, is sustained by the unquestioned consideration of the 1938 agreement, provided there was no breach at the time the parol agreement was entered into. For the reasons herein stated, I submit there was no breach at that time or later, available to the plaintiff.

If the second rule is correct and applicable, then a new consideration must be shown whether there is a breach or not. The statute of frauds provides: "Every contract for the leasing for a longer period than one year, or for the sale of any lands, shall be void unless the contract or some note or memorandum thereof be in writing and signed by the party by whom the lease or sale is to be made." R. S. 1943, sec. 36-105.

This court has said: " * * * the general rule prohibiting the subsequent oral modification of contracts required by the statute to be in writing applies only with respect to those provisions which the statute expressly requires to be contained in the writing in order to make it valid." *Hecht v. March*, 105 Neb. 502, 181 N. W. 135.

Was the contract one required to be in writing? The 1938 contract was in writing, as required by the statute of frauds. The acceptance of the modification was in writing, although the offer was oral. So the precise question is whether or not the modification of 1941 went to a provision of the 1938 contract, which the statute of frauds requires be in writing.

It is not claimed here that the 1938 contract did not com-

ply with the statute, nor is it claimed that it did not express the true intent of the parties. Obviously, it was supported by a valuable consideration. The price was not stated in the 1938 contract, because when that contract was made, the price had not been agreed upon. It is not necessary that the price be stated in the writing. *Rank v. Garvey,* 66 Neb. 767, 92 N. W. 1025. There is no contention here that the time of performance must be stated in the writing. The method for determining the price had been agreed upon and was stated in the writing. The modified method was for the parties themselves to agree upon the price. They did that. Certainly, if it is not necessary that the price be stated in the contract in order to meet the terms of the statute, then the method for determining the price need not be so stated. The statute does not expressly require that it be contained in the writing. In *Hetzel v. Lyon,* 87 Neb. 261, 126 N. W. 997, a written contract provided that it should terminate " * * * at the end of 60 days from date, unless an extension of time is made in writing and attached hereto." It was extended by parol. It was there held that " * * * the statute does not require that the time for the existence of the agent's authority to sell must be stated in the written contract, and therefore that is one of the provisions that may be modified by parol. This disposes of the principal question in the case."

The 1938 agreement was supported by a valuable consideration, other than the promise to pay and accept a sum which was to be later determined. The parties were " * * * at liberty to modify by parol such portion of the contract as the statute does not require should be in writing." *Rank v. Garvey, supra.* That they did here. Hence, that rule stated by the majority has no application. I have been cited to no authority holding that the statute of frauds is a bar under these circumstances, and the majority cite none.

The majority state: "The evidence is clear that no new consideration existed for the agreement to accept $12,000 in full settlement of the amount due under the contract." This is bottomed on the proposition that "an agreement to

pay a *smaller* sum in discharge of a *larger matured* obligation does not constitute any consideration for an agreement to forego the residue." (Emphasis supplied.) Obviously they consider the $12,000 a lesser sum, but they state no figure as to the amount of the "larger matured obligation." Nor do they state any yardstick upon which such a contention rests, nor do they refer to the contract provisions that would determine the matter.

The majority earlier state that " * * * the liability of defendant under the terms of the modification agreement itself (1938 contract) was again fixed by the contract of September 15, 1934." The majority overlook the fact here, and elsewhere in the opinion, that after the contract of 1938 was entered into, the 1934 contract was modified and remained in full force and effect, as "specifically modified" by the 1938 contract. Assuming that the payment permissible under the 1938 contract was not made and that defendant had breached it, the 1934 contract was still modified by the 1938 contract in a material way, and plaintiff's rights under the 1934 contract were subject to those express modifications. The rights and liabilities of both plaintiff and defendant must still be determined by reference, not to the one, but to the two contracts.

Assuming that the defendant had breached the contract by failure to put the appraiser provisions in motion, and failure to complete the purchase of the property on March 1, 1940, what then were the contractual obligation and rights of the plaintiff and the defendant? How much, if anything, did the defendant owe the plaintiff on March 1, 1940, or January 21, 1941, or any time between?

Three answers may be advanced. One, that which the plaintiff sets forth and the majority accept, without reference to the contracts, i. e., that all the delinquencies under the unmodified 1934 contract became immediately due and payable, and that on January 21, 1941, they exceeded $12,-000 in amount. The 1938 contract makes no such provision. It does not provide that if the purchase was not completed on March 1, 1940, the entire delinquencies should be due and

payable.   Nowhere in the contract is it even suggested that that is the defendant's obligation.   The 1938 contract clearly negatives such a construction.   It provides that the payments called for by the terms of the 1934 contract "shall be suspended until March 1, 1940."   Clearly, the suspended payments were the monthly payments of a stipulated amount. The contract does not provide that they may be resumed after that date.   But it may be argued that suspension gives the right to resume.   From that it does not follow that delinquencies also must be paid.   The 1934 contract provides that the monthly payments are to be applied first to interest and then to principal.   The 1938 contract contained a provision intended to tie defendant to this land until March 1, 1940.   It stated that the releasing of the defendant from liability to make the payments provided for in the 1934 contract was on the distinct understanding that defendant was to occupy the premises until March 1, 1940, and that if, prior thereto, he removed from the premises without plaintiff's approval, then "in such case the liability of the second party shall be governed by the terms" of the 1934 contract.   That is the only provision I find in the 1938 contract that removes the 1934 contract from the 1938 modifications.   Such a clause expressly removing the restrictions of the 1938 contract in one particular event negatives any intent that it should follow in any other event.   It likewise negatives any claim that a failure to purchase on March 1, 1940, made the delinquencies under the 1934 contract immediately due and payable. Had they so intended they would so have stated.   Such a contention is further negatived by a specific, clear provision as to what defendant's obligation will be. The contract contains this in paragraph VI: "In case second party shall for any reason fail to complete the purchase of said property on or before March 1, 1940, the second party shall, in consideration of the agreements herein contained to be performed by the first party, yield possession of said premises on March 1, 1940 and execute a Quit Claim Deed to her as of that date, relinquishing all rights in said property under the contract of September 15, 1934, upon his being reim-

bursed for any improvements placed upon the property by the second party with the consent of the first party, less depreciation thereon, as provided for in paragraph III supra." No alternative obligation or right is given the defendant. He "shall" yield possession; he "shall" quitclaim, upon being reimbursed for improvements, if any. I shall return to a discussion of this clause presently. I now point out that it negatives any obligation to pay the delinquencies under the 1934 contract.

So, there is no contractual basis that I can find to support the contention that either on March 1, 1940, or January 21, 1941, defendant was owing plaintiff a "matured obligation" of $12,000 or more. And hence, under the rule cited by the majority, the evidence does not show that there was a lack of consideration for the agreement to accept $12,000 for the land.

The second answer might be advanced that on March 1, 1940, when defendant failed to complete the purchase, he had the right and was obligated to resume the 1934 monthly payments that had been suspended. Save for paragraph VI, the cited clauses of the contracts might support that contention.

The 1934 contract provided for the payment of the purchase price and interest in monthly installments beginning at $250 and increasing to $450. It further provided that if any installment was not paid when it became due, then the plaintiff had the option to declare the whole of the indebtedness due and payable, and if not paid within 30 days after written demand, then the plaintiff had the right to maintain an action at law or in equity to recover the same, or to recover possession and terminate the rights of defendant in the premises.

Plaintiff might then claim that on March 1, 1940, the 1938 contract was self-executing; that by its terms the 1934 contract, as modified, was in force; and could demand that defendant resume payments of the monthly installments that had been suspended. Defendant did not resume the payments. Neither did plaintiff, then or thereafter, declare

the whole of the indebtedness due and payable. The first declaration of that kind is in plaintiff's petition in this action. Nor did plaintiff give the written notice demanding the payment that was a contractual condition precedent to plaintiff's right to maintain an action at law or in equity to recover possession, or to terminate defendant's rights. In lieu of the contractual action required, the parties began the negotiations herein discussed, and under plaintiff's theory, after defendant had lost the right to pay the appraiser-fixed price. Those negotiations resulted in the agreement of January 21, 1941, which the defendant asks be specifically enforced. Was the sum of $12,000 a "smaller sum" than the "matured obligation" on either January 21 or February 15, 1941? Plaintiff had not exercised his option to declare all payments due. There were 12 monthly installments delinquent on February 15, 1941. The maximum monthly installment was $450, plus a small interest accrual. The matured obligation on January 21, 1941, was not in excess of $4,950 and interest for a few months, and on February 15, 1941, not in excess of $5,400 and interest for a few months.

On this theory, defendant was offering to pay $12,000 which was more than he was then obligated to pay, and plaintiff agreed to accept more than he then had a right to demand and more than he had any chance of receiving except by voluntary action of defendant in the manner outlined in the settlement. That I submit is an adequate consideration, under the rule announced by the majority.

The third answer, and the one which to me should be accepted, is that we apply the plain, clear, explicit language of paragraph VI above quoted, which fixes the rights and duties of the parties in the event the defendant failed to complete the purchase on March 1, 1940. Plaintiff then was obligated to pay defendant the value of the improvements, if any, placed thereon as provided in the 1938 contract, and defendant was obligated to surrender possession and give a quitclaim deed. That is the only provision in the contract dealing directly and explicitly with this question. Certainly under that provision defendant was not obligated to pay

plaintiff anything, matured or otherwise, on March 1, 1940, or on January 21, 1941, when plaintiff accepted defendant's offer to pay $12,000 and agreed to sell the land for that amount. From this it follows that when the offer to pay $12,000 was accepted by plaintiff the agreement was to pay and to accept an amount not otherwise payable and a consideration is shown.

Further, it may be pointed out that the only agreement to accept a lesser amount in payment of a larger matured obligation, which this record shows, is contained in the 1938 contract. That contract was in writing and was supported by a valuable and adequate consideration.

The rule of law cited by the majority that an agreement to pay a lesser sum in lieu of a larger matured obligation is not a sufficient consideration is one not favored, and is one limited to a mere part payment or promise of part payment of a larger matured obligation. 1 Williston, Contracts (Rev. ed.), sec. 120, p. 416; 17 C. J. S., sec. 114, p. 469; 12 Am. Jur., sec. 89, p. 583; 1 Restatement, Contracts, sec. 83, p. 94.

On the basis of this record as to consideration, there is another basic rule of contract law that is applicable here. Where mutual promises are made, the one furnishes a sufficient consideration to support an action on the other, provided the promises are mutually advantageous or detrimental. This court and other courts have repeatedly followed that rule and applied it to contracts of sale and purchase of land. 17 C. J. S., sec. 97, p. 440; 13 C. J., sec. 170, p. 328; 1 Williston, Contracts (Rev. ed.), sec. 103F, p. 347; 66 C. J., sec. 91 p. 549; 66 C. J., sec. 92, p. 550; *Pryor v. Hunter,* 31 Neb. 678, 48 N. W. 736; *Turner v. Hall,* 128 Va. 247, 104 S. E. 861; *Hoagland v. Murray,* 53 Colo. 50, 123 Pac. 664; *Johnson v. Lennox,* 55 Colo. 125, 133 Pac. 744; *Neola Elevator Co. v. Kruckman,* 185 Ia. 1254, 171 N. W. 743; *Flannery v. Wessels,* 244 Pa. St. 321, 90 Atl. 715; *Harper v. Bronson,* 104 Fla. 75, 139 So. 203; *Rodman v. Robinson,* 134 N. C. 503, 47 S. E. 19; *Larrabee v. Bjorkman,* 79 Or. 467, 155 Pac. 974; *Craig v. Dumars,* 7 Tex. Civ. App. 28, 26 S. W. 743; *Midkiff v. Glass,* 139 Va. 218, 123 S. E. 329;

*Jennings v. Dexter Horton & Co.*, 43 Wash. 301, 86 Pac. 576; *Crowley v. Vaughan*, 88 W. Va. 223, 106 S. E. 539.

There is another rule that has a particular application here, which this court has recognized and followed. It is stated in 1 Restatement, Contracts, sec. 90, p. 110: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." See 1 Williston, Contracts (Rev. ed.), sec. 140, p. 503, for a discussion of this rule.

Not only was the plaintiff's promise reasonably expected to induce action on the part of defendant, but action in the raising of the money was requested, and it did induce action of a definite and substantial character. Defendant made application for a land bank loan; he paid the required application fee of $20; he negotiated the loan; he negotiated and secured the promise of an additional personal loan; he did everything that he could do up to the point where plaintiff had to act, and so notified and advised plaintiff well within the time set by the agreement. Injustice can be avoided only by enforcing the promise.

In *Fluckey v. Anderson*, 132 Neb. 664, 273 N. W. 41, we construed and followed the above rule from Restatement, and said this: "It will be noted that the Restatement doctrine is not related to pleading but is a statement of substantive law. As applied to the facts in the instant case, it supplies sufficient consideration, or the equivalent of it, to assure the validity of the transaction involved. Whether proper terminology would require it to be designated as conventional consideration may be a question for the text-writers, but a careful analysis of the entire situation discloses that beyond question it amounts to a technical consideration because of the necessary detriment to the promisee involved."

I submit that there was a consideration for the agreement, no matter from what angle it is approached.

I would grant specific performance to the defendant.

I further submit that if we are going to ignore the issues here on this appeal and determine plaintiff's right to strict foreclosure, he has not shown a right to that relief and that for two reasons.

Under the provisions of paragraph VI, above quoted, of the 1938 contract, plaintiff was obligated to reimburse defendant for improvements, if any, placed upon the property. He then had a right to demand possession and a quitclaim deed. The 1938 contract was written by plaintiff, so that defendant was tied to the property until March 1, 1940, and then if he did not complete the purchase, he had no equity in the land and was to get off, get out, and quitclaim any claim under the 1934 contract. Defendant was not obligated to pay, and was not given the right to pay, the amounts due under the 1934 contract, as plaintiff in this action prays and the majority now order him to do.

Neither is plaintiff entitled to strict foreclosure under the 1934 contract. That contract provides: " * * * if said purchase price * * * or any part or instalment thereof, * * * is not paid when the same becomes due, * * * then, * * * the party of the first part (plaintiff) shall have * * * the option of declaring the whole of the indebtedness * * * due and payable * * * and if the whole of said indebtedness * * * is not paid within thirty (30) days after written demand * * * is made * * * then party of the first part (plaintiff) shall have the right to maintain an action at law or equity to recover the same, or to recover said premises and terminate all rights * * * " of the defendant.

Plaintiff pleads in this action that he does now "declare the entire balance of said purchase price due and payable." Obviously, he did not previously do so, nor had he given the notice or allowed the defendant the 30 days' waiting time to make the payment.

The rule in the case of mortgages having an acceleration clause is stated as follows: "If the mortgage allows grace after notice, the mortgagee cannot foreclose before the period expires; * * * ." 1 Glenn, Mortgages, sec. 51, p. 334,

citing *Railway Co. v. Sprague*, 103 U. S. 756, 26 L. Ed. 554; *Batchelder v. Council Grove Water Co.*, 131 N. Y. 42, 29 N. E. 801; *Potomac Mfg. Co. v. Evans*, 84 Va. 717, 6 S. E. 2. See 5 Tiffany, Real Property (3d ed.) sec. 1513, p. 581, and 41 C. J., sec. 1036, p. 851, 1 C. J. S., sec. 26, p. 1067; 1 Am. Jur., sec. 35, p. 428.

Plaintiff has not complied with the contractual conditions precedent to maintain an action, if any he has, for strict foreclosure.